# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| APPISTRY, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:13CV2547 HEA |
| AMAZON.COM, INC. and AMAZON WEB SERVICES, INC., | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1404, [Doc. No. 44]. Plaintiff opposes the motion. For the reasons set forth below, the motion is granted.

## Facts and Background[1]

Plaintiff filed this action seeking damages for alleged patent infringement against Defendants under the provisions of Title 35 of the United States Code. The Complaint alleges the following facts:

Plaintiff, founded in 2001 in St. Louis, developed and owns all of the intellectual property rights to an award-winning "fabric" computing technology

---

[1] The recitation of facts is set forth for the purposes of this Opinion, Memorandum and Order only; it in no way relieves any party of the necessary proof thereof in later proceedings.

that is protected at least in part by the Patents asserted in the Complaint. The Technology was allegedly a breakthrough technology in high performance computing. Plaintiff expended substantial investment to develop the Technology. This investment resulted in a successful ongoing business, headquartered in St. Louis, specializing in high performance computing (HPC) technology utilized in areas such as intelligence, defense, life sciences, financial services, and transportation.

In 2004, Plaintiff contacted Defendant Amazon to offer it a license to the Technology. In an effort to engage in such discussions, Plaintiff and Defendant Amazon entered into a non-disclosure agreement drafted by Amazon.

An initial meeting was held at Amazon's Seattle office in approximately August of 2004. At that time, Plaintiff generally explained Plaintiff's capabilities, with a particular emphasis on the transactional reliability of the Technology. Present at the initial in-person meeting were approximately three Appistry employees and approximately four Amazon employees. The Amazon employees were identified as individuals involved in the development and engineering of Amazon's cloud services.

At some point prior to September 14, 2004, Amazon indicated that it was interested in the Technology in connection with Amazon's business plans to offer a strategic business initiative central to Amazon's future.

On or before September 14, 2004, Plaintiff informed Amazon that it had various patent applications pending on the Technology.

Because of Amazon's expressed interest at the initial meeting, a second meeting was held on September 14, 2004 at Amazon's Seattle office. Werner Vogels, Amazon's Director of Systems Research, was present at the second meeting along with approximately 10 to 12 of Amazon's senior technical engineers directly involved in Amazon's cloud services. The September 2004 meeting lasted approximately four hours. During the course of the meeting, Amazon employees asked numerous, highly detailed questions about the functionality of the Technology. Amazon's questions demonstrated Amazon's desire for a detailed understanding and knowledge of the Technology.

Although Plaintiff was initially hesitant to disclose the minute details of the Technology, Mr. Vogels and other Amazon employees stated that Amazon would be skeptical of Plaintiff's technical abilities if Plaintiff did not disclose all of the details. Mr. Vogels and other Amazon employees also stated that Amazon needed

all of the details in order to fully evaluate the value of the Technology and to have faith in Plaintiff's engineers to build a quality system.

Following the above statements from Mr. Vogels and other Amazon employees, Plaintiff disclosed very specific algorithms, flow charts, and branches in the decision tree of the Technology. Amazon engineers asked many very specific questions about the Technology, which Plaintiff answered. Plaintiff provided this information believing such disclosures were protected under the non-disclosure agreement with Amazon and under its pending patent applications. The level of detail provided to Amazon was sufficient to copy and build the Technology.

Plaintiff demonstrated proof of concept of the Technology to various Amazon engineers and at least one Amazon development manager on September 15, 2004. This proof of concept demonstration included uploading certain portions of the Technology on Amazon computers to demonstrate the system.

Subsequent to the September 2004 meetings, Plaintiff corresponded with Amazon in an effort to formalize the anticipated partnership with Amazon. Initially, Amazon indicated its engineers were "evaluating" the Technology. Eventually, Plaintiff learned that Amazon had no interest in licensing the technology.

Subsequently, Plaintiff learned that Amazon had copied the Technology for various Amazon services.

The Complaint sets out two counts of patent infringement.

Defendants move to transfer this action to the Western District of Washington based on a forum-selection clause contained in a "clickwrap" agreement between Plaintiff and Defendant Amazon Web Services, Inc.

## Discussion

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.,* 183 F.3d 750, 752 (8th Cir.1999) (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15 (1972)). "They are enforceable unless they would actually deprive the opposing party of his fair day in court." *Id.* See also, *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, __ U.S. __, 134 S. Ct . 568 (2013), (a forum selection clause is enforced through a § 1404(a) motion to transfer and "[w]hen a defendant files such a motion . . . a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575.)

Before addressing the validity or the enforceability of the forum selection clause, the Court notes that the language in the clause at issue in this case is clear and unambiguous. The clause states that

> Any dispute relating in any way to the Service Offerings or this Agreement where a party seeks aggregate relief of $7,500 or more will be adjudicated in any state or federal court in King County, Washington. You consent to exclusive jurisdiction and venue in those courts.

The use of the term "exclusive" makes clear that this is a mandatory forum selection clause, rather than a permissive forum selection clause. *Dunne v. Libbra,* 330 F.3d 1062, 1064 (8th Cir .2003) (explaining that mandatory forum selection clauses employ terms such as "exclusive," "shall," and "only").

Plaintiff challenges the validity of the forum selection clause on the basis that it was not entered into by any representative of Plaintiff who had authority to agree to the clickwrap agreement.

A "clickwrap" agreement is formed when website users click a button that indicates that users "agree or accept" to terms of an agreement upon viewing its terms posted on the website. *Nguyen v. Barnes & Noble,* 763 F.3d 1171, 1175–76 (9th Cir. 2014). To determine whether there was a valid clickwrap agreement, the court must determine whether users (i) had reasonable notice of the terms of a clickwrap agreement and (ii) manifested assent to the agreement. *Specht v. Netscape Communications Corp.,* 306 F.3d 17, 28–30 (2d Cir. 2002). However, courts usually enforce a clickwrap agreement because it requires users to take

affirmative action to manifest assent by clicking a button or a checkbox which accompanies a statement instructing users that their click would constitute their assent to the terms at issue. *Van Tassell v. United Marketing Group, LLC,* 795 F.Supp.2d 770, 790 (N.D.Ill.2011). *See Newell Rubbermaid Inc. v. Storm,* No. CV 9398–VCN, 2014 WL 1266827, at *2 (Del. Ch. Mar. 27, 2014) (a valid clickwrap agreement found when (i) a box titled "Grant Terms and Agreement" stated, "[y]ou must read your Grant Agreement and review the terms to continue," (ii) an agreement was provided in a hyperlink, and (iii) a checkbox underneath the hyperlink read, "I have read and agree to the terms of the Grant Agreement."); *see also Burcham v. Expedia, Inc.,* No. 4:07CV1963 CDP, 2009 WL 586513, at *1, 3 (E.D.Mo. Mar. 6, 2009) (valid clickwrap agreements found when (i) a "Continue" button led to a page where it stated, "By continuing on you agree to the following terms and conditions," and provided the entire terms of agreement in full text, and (ii) a box stated, "I agree to the terms and conditions," while the phrase, "terms and conditions," was a hyperlink to a user agreement).

As Defendants correctly argue, the first paragraph of the Amazon Web Services Customer Agreement, *i.e.* the clickwrap agreement, contains an express representation that the person entering into the agreement for an entity represents to Amazon that the person has legal authority to bind the entity. A person's assent to an agreement is determined by his or her objective conduct. *Seibert v. Amateur*

*Athletic Union of the U.S., Inc.,* 422 F.Supp.2d 1033, 1039 (D.Minn.2006). Even if a person does not personally sign an agreement, he or she may be bound to it according to contract and agency principles. *Id.* An individual's failure to read or understand a contract before signing it does not invalidate assent. *Id.* at 1039 (quotation omitted). *Heath v. Travelers Companies, Inc.* 2009 WL 1921661, 4 (D.**Minn. 2009).**

    A principal is responsible for the acts and agreements of its agent, but only if the agent acts with authority—either actual authority, which may be express or implied, or apparent authority. *Lynch v. Helm Plumbing and Elec. Contractors, Inc.,* 108 S.W.3d 657, 660 (Mo.App. W.D.2002). In the absence of actual authority, an agent's acts may still be binding on a principal if the acts are performed with "apparent authority." *Id.* "Apparent authority" exists when a principal, either by its acts or representations, has led third persons to believe authority has been conferred upon an agent. *Id.* To establish apparent authority, a party must show: "(1) the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal." *Id.*; *see also IOS Capital, LLC v. Allied Home Mortgage Capital Corp.,* 150 S.W.3d 148, 153 (Mo.App. E.D.2004).

    "When a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act on behalf of his principal, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform the act." *K & G Farms v. Monroe County Serv. Co.,* 134 S.W.3d 40, 43 (Mo.App. E.D.2003). Typically "any conduct by the principal which, if reasonably interpreted, would cause a third person to believe that the principal consents to the acts of the agent is sufficient to create apparent authority." *Lynch,* 108 S.W.3d at 660.

> Once established, apparent authority is the equivalent of expressly conferred authority as to third parties. *Utley Lumber Co. v. Bank of the Bootheel,* 810 S.W.2d 610, 613 (Mo.App. S.D.1991). Where there is apparent authority and an innocent third party relies on it, the principal is estopped to deny the agent's authority. *Id.* "We assess apparent authority according to the reasonable interpretations that a third party would make." *Lynch,* 108 S.W.3d at 661.

*Pitman Place Development, LLC v. Howard Investments, LLC*, 330 S.W.3d 519, 527 (Mo.App. E.D. 2010).

The factual circumstances of this matter establish that whoever clicked the acceptance of the Amazon Customer Agreement was acting for Plaintiff. The Agreement clearly sets out that the person accepting the terms of the Agreement represent to Defendants that he or she is legally authorized to enter into the Agreement on behalf of Plaintiff. Although Plaintiff argues that the Agreement is a "take it or leave it," non-negotiated agreement, these characteristics do not automatically render the Agreement unenforceable. Plaintiff's employees entered into several agreements, consolidated most of these into one agreement, and continued to utilize the services provided by Defendant Amazon Web Services. Plaintiff's argument that these were "take it or leave it" agreements and were non-negotiated loses much force when taken together with the fact that Plaintiff continued to use the services provided. Plaintiff cannot accept the benefits only until the Agreement requires something it does not favor and then attempt to sidestep the obligations by claiming the Agreement was a "take it or leave it," non-

negotiated one sided Agreement forced upon it by an overpowering giant attempting to use its substantial market power.

Moreover, the Court agrees with Defendants that Plaintiff's actions subsequent to the acceptance of the Agreements establish ratification of the Agreements. "Ratification in agency is an adoption or confirmation by one person of an act [such as entering into a contract] performed *on his behalf* by another without authority." *Springfield Land and Dev. Co. v. Bass,* 48 S.W.3d 620, 628 (Mo.Ct.App.2001) (quoting 2A *C.J.S. Agency,* § 63 (1972)) (alteration in original) (emphasis added). "'[R]atification occurs when person A confirms or adopts the conduct of person B, who acted on behalf of person A in absence of person A's authority." *Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 668 (Mo.Ct.App.2002) (alteration added). Additionally, it is essential that person A have knowledge of all the material facts when charged with accepting the acts of person B. *Id.* "Thus, knowledge is an essential element of ratification." *Id. John Doe CS v. Capuchin Franciscan Friars*, 520 F.Supp.2d 1124, 1132 (E.D.Mo. 2007).

Plaintiff argues that as a principal, it did not have knowledge of the contract. While the Court agrees that knowledge is indeed essential, Plaintiff's position that it lacked knowledge until Amazon's discovery of the Agreements in June, 2014 is untenable. Plaintiff's continued use of the services supplied under the Agreement,

even beyond June, 2014 establishes Plaintiff's knowledge.  Indeed, after Plaintiff was advised of the Agreement's terms, Plaintiff failed to take the steps required under the Agreement to terminate it.

Plaintiff also argues that the forum selection clause in the Customer Agreement does not apply to this dispute.  The Court disagrees.  The forum selection clause provides that it applies to *any dispute relating in any way to the Service Offerings or this Agreement*.  Plaintiff has sued Defendants based on its allegations that Amazon Web Services EC2 service infringes its patents.  This clearly falls within the broad scope of the clause as it relates to the Service Offerings of Defendants.  Although Plaintiff argues that the Agreement should not be allowed to encompass this patent dispute, the clear language of the forum selection clause includes this action because it "relates to" the Service Offerings.  It should be noted, however, that the transfer of this action in no way inhibits Plaintiff's cause of action on its allegations of patent infringement; it merely transfers the action with no determinations as to the merits of the allegations.

## Conclusion

Based upon the foregoing analysis, the Court concludes that the Motion to Transfer Venue to the Western District of Washington is well taken and will be granted.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1404, [Doc. No. 44], is granted

Dated this 2nd day of March, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE